Case No. 22-1006, Luis Villa-Arce, appellant v. Cmsnr of Internal Revenue. Mr. Duncan for the appellant, Ms. Weeks for the advocate. Good morning, Mr. Duncan. Good morning. May it please the court, the question before your honors this morning is whether or not the whistleblower office, and then later the tax court, abused its discretion in arbitrarily and capriciously denying whistleblower v. Arce's claim for a fee award as being unrelated to the subject matter or information that he provided to the IRS that triggered the audit. Can we assume from that formulation you're willing to accept APA-like review? You said abused its discretion. Certainly for purposes of this case, but that's not to sort of deny the distinction that exists between the statute and the regulation. Because if you look at the statute and what the statute requires in terms of what someone like v. Arce needs to do or accomplish in order to be entitled to an award, it's very simple. All he has to do is provide information that triggers an action that results in a recovery over $2 million. And he's seemingly entitled to an award. But then we get to this regulatory construct that makes the hill significantly steeper for folks in v. Arce's position. By adding many different requirements, the most relevant of which in this case is found in example two that was discussed earlier, where all of a sudden this concept of relatedness comes up. Prior to that- I thought you weren't challenging regulations. I'm not challenging the regulations. I'm just sort of acknowledging the tension that exists and the hill that needs to be climbed by people like Whistleblower v. Arce. And I think one of the questions that was asked in the case before that really needs a little bit of focus here is what's the reality of how these things come to be? And I think v. Arce's situation is meaningful, meaning he's an HR manager, right? He's not a CFO. He's not somebody in the accounting practice, but rather he's a guy who hears information that he believes is leading to something that is wrong, some sort of wrongdoing. And to the best of his ability, whatever it may be, you know, whatever his training, education or experience, he brings that information as a whistleblower accepting the risk that's associated with doing so to the IRS and says, here's what I know. What's the risk? I'm sorry? Did you say accepting the risk? Accepting the risk of being a whistleblower. In other words, there's a risk according with being a whistleblower, somebody who's going to raise their hand and say, I'm here to provide the information that I'm well aware of, and I think it was alluded to by the panel, that this is going against perhaps people that he works with, he or she might work with, or a company that they have loyalty to. It's a behavior that I think needs to be incentivized. Now, this has identity disclosed to the taxpayer? No, I don't believe the identity of the whistleblower is ever disclosed to the taxpayer. Right. By the IRS. By the IRS. So what's the risk? I think the risk is the possibility of it being disclosed. I think the risk is of the information being exposed or leaked. And the risk is also being involved in a process, like in the RSA's case, that's lasted six going on seven years now from the time that he reported it up until now. Now his information is disclosed. I'm sorry? Now his identity is public. His identity is public, but that of the taxpayer is. His identity is public because he's filed a lawsuit. That's correct. That was totally within his discretion. It is. And circumstances, admittedly, in this case, have changed over time between when he first filed it to 11 and where he is today. Nevertheless, the decision of the tax court and the decision of the whistleblower's office is, in fact, arbitrary, because if you look at the regulations and this concept of unrelated or relatedness that arises in example two, in connection with the administrative record that exists in the RSA's case, there's absolutely no information that directs the whistleblower's office and subsequently the tax court to the idea that the information provided by the RSA was unrelated. The RSA provided information that he believed the taxpayer was artificially inflating or fabricating its deductions and depreciations in an effort to diminish its tax liability. That triggered an investigation by the IRS that was based on and focused on the inflation or fabrication of deductions and depreciation. It ultimately led to a recovery. But everything in your presentation is packed into the level of generality at which you describe the issue. Mr. of the RSA had said, well, there's this head tax. Am I in the right case here? Sure. And that's the tax avoidance strategy, whereas the service said that actually was fine. We checked that out, and that wasn't a problem. And the second issue, too, instead they recover on some alternative fuel credit or foreign tax credit, which I don't think Mr. of the RSA ever provided information on. The RSA did its best to provide specific and credible information that would trigger the action consistent with the regulatory scheme that exists. There's no doubt that the IRS then used its training, education, and experience based on its initial review to determine the scope of the investigation that it was going to conduct. But what we know about this case is the information that was provided by the regulators' report, as well as the sort of hourly documentation of what was performed, is that the scope of the inquiry, there's no bright line indication that the scope of the inquiry ever increased or that they went down a separate path. Rather, the only conclusion that can be drawn is that they simply said, okay, we're going to slap one label on it that's different than what Mr. of the RSA brought to our attention, or at least the spirit of what Mr. of the RSA brought to our attention, and deem or declare it unrelated for purposes of his award petition. Suspella, for us, with more concreteness, your understanding of why there's overlap or why the information that Mr. of the RSA brought to the service's attention was actually substantially related to the tax revenues that they collect. Sure. So the RSA brought to the attention of the IRS a couple of different issues involving the head tax and the way he characterized the head tax. Basically, if this foreign corporation was taking a deduction it wasn't otherwise entitled to, and also brought to its attention that it was overpaying or intentionally overpaying subcontractors in an effort to increase its deductions again to minimize its tax liability. That is the information that he was aware of as a lay person. And so that's what he brought forward. What we know about the scope of the investigation is contained within the administrative record, where the initial reviewer from the whistleblower's office, as well as the IRS auditor that was assigned to the case, identified certain codes, namely depreciation, costs of goods and services. They're laid out more specifically. So what's ultimately collected? What are the matters ultimately collected on, and how are they relating to this notion of a per-employee deduction, $1,000 a head for the overpayment of the subcontractor? So based on the nature of the process, the only thing that I can comment on is based on the information that's been provided to us as the whistleblower, and that's basically, here's what we collected under, and they tell us that they didn't collect under the head tax, but there is no explanation or reasoning provided to us to describe or explain why it is that they've made the determination that the information he provided is unrelated to the basis on which they collected the in excess of $2 million. I'll save the balance of my time for rebuttal. Thank you. Good morning, Ms. Wicks. Yes. You may proceed when ready. Thank you for your support. I'm Marie Wicks on behalf of the Commissioner of Internal Revenue. The critical question in this case is whether proceeds were collected based on whistleblower information, and the task force correctly concluded that the record in this case establishes that no proceeds were collected based on Mr. Villarsay's information he submitted. He submitted a form 211 describing a head tax of $1,000 per employee per month, and he supplemented, he attached to that form about 30 account codes with no description as to the role that those account codes played in his allegations, and he also stated in a cover letter to his counsel that he wasn't sure how the company disguises the head tax, but it fell under the HO expense with its internal account codes. And then he supplemented with another letter in March of 2018, I believe, where he made allegations pertaining to transfer pricing violations under Section 482. IRS conducted an audit of the taxpayers' 2014 returns and ultimately made adjustments on unrelated issues, the COGS, cost of goods sold, depreciation, foreign tax credit, other deductions, and repairs and maintenance. And at the close of the audit, the revenue agent completed an evaluation of Form 11369 where he summed up the role that the whistleblower's information played during the audit, and on that form he clearly indicated that the adjustments were related to non-whistleblower information. But again, that report is not provided to the whistleblower, right? The whistleblower receives the preliminary determination letter, but not the report explaining the difference between the issues and why the recovery was not based on the information the whistleblower provided. I don't believe that he was prior to the tax court proceedings, but as part of the tax court proceedings, the administrative record is... Can you talk to us a little bit about the jurisdictional question? I take it the commissioner takes the position that the two elements of a whistleblower award determination under B-1 are jurisdictional prerequisites. As a practical matter, what rides on that? What difference does it make? I guess one difference is the service would never forfeit assertions of those grants, even if it failed to properly assert them, because jurisdiction is not waivable. But other than that, why is the commissioner taking the position that, in effect, the merits of the claim are jurisdictional prerequisites? Yes, Your Honor. We believe that the statute compels that in the wake of this court's decision in Lee v. Commissioner. In that case, this court looked at 7623 B-1 with respect to the threshold rejection of Ms. Lee's whistleblower claim and found that the tax court lacked jurisdiction over the rejection there. And the main objective of the court's reasoning in Lee was not whether rejection had occurred, but whether an award determination had occurred. So in the course of that decision, this court found that the tax court's precedent, Lacey and Cooper, were wrongly decided. Lacey and Cooper found that both rejections and denials of whistleblower claims satisfied the B-4 scope of jurisdiction in the tax court. So this court's decision in Lee sufficiently abrogated the prior precedent. So if the award is $110 and the whistleblower thinks that's too low, then the tax court has jurisdiction to consider the whistleblower's argument? Well, yes, if there's an award. Yes, Your Honor. And if the award is $1, the tax court has jurisdiction to consider. If the award is zero, it doesn't. Does that make any sense to you? Yes, Your Honor. And part of that premise is under B-1, the non-discretionary award, it's between 15 and 30 percent of proceeds collected as a result of the action based on whistleblower's information. There's a monetary threshold that has to be met. A determination regarding an award, that standard is not satisfied. If the determination is you don't get it, that's your argument? No, Your Honor. Actually, if the determination is no proceeds were collected based on your information, then it's not reviewable award determination. Under B-3, there's an opportunity for the whistleblower office to deny an award if the whistleblower participated in initiating the tax violation itself. So those types of denials are reviewable under the B-4 scope. If the tax court lacks jurisdiction, is there any other court that would have jurisdiction? You couldn't go through the APA because you're seeking money for federal claims. Is there any other court that could hear this? The tax court can't? Your Honor, the tax court would have jurisdiction to determine its own jurisdiction. Which then just makes this whole exercise seem a little silly. If it's tax court or nothing and your theory on jurisdiction merges into the merits, you're just doing something really strange so that if you forfeit, we don't hold you to it. Your Honor, we would argue that under the APA, there is a statute 7623B-4 that provides for jurisdiction in certain circumstances. Provides for jurisdiction to determine jurisdiction. It should meet the prerequisites. But under 5 U.S.C. 701A-2, that precludes judicial review when an action is committed to the discretion of an agency and also 702 precludes judicial review under the APA when another statute that grants consent to sue expressly or impliedly forbids such judicial review. We believe that would come into play here. If B-4 says that any determination regarding an award may be appealed, doesn't that suggest that an unfavorable determination regarding an award may be appealed? Not necessarily, Your Honor. Any is indeed a broad term, but it's gathered by context, and it's tethered to the other language in B-4 determination regarding an award under Paragraph 1, 2, or 3. Well, you say that you've been pushed here by Lee, but in Lee, there was a rejection, as you noted. And your brief itself appropriately acknowledges that there's a clear distinction between Lee and this case, where in Lee, the whistleblower submission was not even referred to a revenue agent. So there wasn't even arguably any administrative action, as the statute and regulations define it, whereas here, there was. Yes, Your Honor, so the court in Lee found that it was sufficient, or it was sufficient for the court to only address whether an action had occurred. But the reasoning is here that proceeds are also required for an award determination to occur. Under the regulations, Section 301.7623-3, C-7 and C-8 define rejection and denial. And with respect to both of those definitions, the word determination is used. So the court's finding that a rejection is not an award determination under B-4 implies that a denial is also not an award determination. And on the merits, you say the proceeds were collected not based on Mr. Villar's information, but from a separate, distinct administrative action. And the separate, distinct administrative action was what? It was one examination initiated. The statute says proceeds are obtained from any administrative action. There was an administrative action that would not have been initiated but for Mr. Villar's information. And the tax court itself held the IRS would not have audited the target taxpayer, but for the whistleblower's information. So what's the rebuttal to the arbitrary and capricious challenge on the commissioner's part? Your Honor, this fits in large part example two in the regulation, dash two that describes the action and proceeds based on. The IRS conducted additional fact-finding during the audit. The revenue agents. I understand what happened, but you're not really explaining why the, even the distinction in example two seems potentially arbitrary. If the commissioner is taking the position that there's, you know, one issue is a distinct administrative action, then why would year two necessarily be related and a different person with the same conduct in year one wouldn't? I mean, it just seems out of thin air. What's part of the same administrative action and what's not? Which is the same issue and which is not? It's just that the commissioner seems to have total free reign in defining that in any way. And is that rational? Non-arbitrary? Your Honor, the reasonable interpretation of the definitions in the regulation. The IRS looked into the transfer pricing allegations. The records show that the revenue agent was looking into depreciation in one entry on page 73 of the revenue agent's case history. He says he communicated with the representative of the taxpayer to determine how the life property was determined. For other deductions, that category, there's a reference to office equipment. And that's on page 71. And the cost of sales subcontracting invoices is another reference. Repairs and maintenance. So there's concrete references to what the revenue agent looked into during the audit. In addition, we have. Thank you. And I think Mr. Duncan has a couple more minutes for rebuttal. Thank you. I'll be very brief. I just wanted to direct the court's attention to where it can be found. Where the information on which the whistleblower's office claims to have made recoveries. Or the subject matter on which they make a recovery. And that's on page 8372 of the appendix. What was it? I didn't get that one. Page 8372 of the appendix. And it's basically a worksheet that gets filled out. And specifically, it's F3. And under F3, it is a table. And it asks the individual filling it out, you know, what recoveries were made related to what the whistleblower reported. And what recoveries were made unrelated to what the whistleblower reported. And they list as unrelated advertising, costs of goods and services, depreciation, other deductions, and repairs and maintenance. Which, again, in the absence of any explanation, and contingent exclusively on this word unrelated, as it appears in exhibit, or example, rather, 2, in the regulations, supports that the decision was arbitrary. In other words, the exact same listing could have been placed on the other side of that table in the absence of rationale and made complete sense with the decision being that the whistleblower was entitled to an award based on the information that he submitted. If there are no questions, I don't think I have anything further. Thank you very much. Thank you. The case is submitted.
judges: Pillard, Katsas, Randolph